The second case for argument is Mongong Deng v. Merrick B. Garland. Matthew Ralph of Dorsey and Whitney on behalf of Petitioner Mongong Deng. Deng is seeking a cat deferral of removal to South Sudan for two interrelated reasons. First, it's probable he will be tortured because he fought against South Sudan as a child soldier. Second, it's as a result of serving as a child soldier. The agency's analysis of both of these issues is clearly erroneous. The record compels the conclusion that Deng will likely be tortured. Justice Breyer, when you say agency, it was clearly erroneous. Who do you mean? I mean, collectively, the immigration judge, the IJ, and the BIA. The BIA reviews the IJ under a clearly erroneous statute. Correct. Our case law is clear that we do not review the BIA under the clearly erroneous standard, and therefore, your brief is wrong in at least three of the subsections in saying that. Wrong in terms of the standard review, which is very important. Okay. Am I correct in understanding that if the evidence compels the conclusion that Deng is likely to be tortured, that he would win his appeal? That's a substantial evidence standard.  Yes. It's defined by the Supreme Court many years ago. Let me start with the child soldier claim. The agency committed two clear errors here, which I'll call for purposes of this argument. You're back to clearly erroneous. I'm sorry. You might want to stick with substantial evidence. Okay. Well, one of the issues was the IJ didn't address, and so you there, and therefore, the BIA didn't review it. Now we have a little murkier standard review. We review the BIA, which includes the BIA's review of the IJ. Very good, Your Honor. Let me start with what I'll call the speculation error. Now, the record is replete with compelling evidence that South Sudan tortures and kills actual or suspected political opponents. No document in the record defines actual or suspected political opponents, but I appreciated Your Honor's comments about speaking from the real world and in performed any act of opposition. The IJ found that even though Dang served as a child soldier, South Sudan would never deem him to be a political opponent because it would be aware that child soldiers would be forced to join the Northern Army through torture, beatings, and threats of death, and therefore, would not hold them accountable for their opposition as child soldiers. But no evidence in the record supports the IJ's interpretation that South Sudan has this enlightened and lenient view of former child soldiers. It was pure speculation. In fact, the agency ignored that at all relevant times, South Sudan retaliated against child soldiers who opposed it. Now, it's important to remember that there are two pertinent civil wars. What's the relevant time now? Well, I was just getting to that, Your Honor. There are two pertinent civil wars. First was the South Sudan civil war against Sudan in which Dang fought as a child soldier approximately 20 years ago. The second is the current de facto civil war that is internal to South Sudan itself. And the evidence shows that South Sudan tortured or killed child soldiers in both of those civil wars. An appendix in the first civil war. And the evidence was not clear to the agency, to the BIA and IJ. I don't believe they looked at it. I believe they ignored it, Your Honor. They talked about the numbers were not. No, no. They did not talk about the execution of child soldiers. There's zero discussion of that. The agency believed that there was no way Dang could be a political opponent based on being a child soldier, and they're simply wrong. At Appendix 137, South Sudan pronounced death sentences on child soldiers in 2002 and 2003. When South Sudan demobilized child soldiers, it airlifted them to different regions due to fear of attacks on them. That's Appendix 138. In the second civil war, which is going on right now, the South Sudan Army recently detained and executed youths, including children, who were suspected of being rebel fighters for the National Salvation Front. That's Appendix 196. In 2021, South Sudan forces were either responsible for or complicit in public executions of children who were thought to be political opponents at Appendix 126. So the IJ clearly erred in engaging in the speculation that Dang could not be deemed a political opponent. Let me turn now to the no evidence error. The agency concluded there is no evidence, and by this I mean the IJ concluded there was no evidence that the IA affirmed, that Dang is personally at risk of torture because it believed there is nothing specific or identifiable about him that would make him stand out or cause him to be intentionally targeted for harm or torture. But this is wrong on a number of grounds. First, the agency actually found that Dang's family reported him missing to the South Sudan Army. That South Sudan Army is the same army that's in charge today in South Sudan. They have direct information from his family that he was kidnapped by the Northern Army. Thus, if Dang were removed to South Sudan, it's highly likely that Dang — that South Sudan would already know that Dang fought against it because it was reported to them or would presume that he had based on the kidnapping or would detain him and at least question him about it and find out that he has PTSD based on being a child soldier. You know, this took place, the kidnapping and the child soldiering, between 1999 and 2001, right? Correct. And the second civil war has been going on for years, and I think that yesterday they were shooting on the streets of Khartoum. It's a mess right now. But is there really any evidence in the record that with all the child soldiers that are being lined up and shot right now, they're child soldiers that are operating as child soldiers right now. Is there any evidence that they're lining up people that were child soldiers 25 years ago? No, Your Honor, there's not. There's no evidence like that in the record. All right. So then it's a question of predictability at that point. Is it foreseeable, right? I believe so, yeah. I believe so. But I think the agency is responsible for looking at all of the evidence in the record, and here I don't think that they did that. Instead, they draw conclusions that there's no evidence of this or no evidence of that. Let me return to the no evidence issue. The agency also ignored Deng's testimony, which the agency found to be credible, that South Sudan already targeted him for retaliation. When he escaped the Northern Sudan Army and came to his village, his aunt warned him to avoid the South Sudan Army and flee his village. Now, the parties agreed that the army in that account that was looking for him was the South Sudan Army that was reported in missing. The parties disagree over the meaning of the following sentences that were in Deng's testimony. And she, the aunt, told me, I couldn't be in that village. Those people are looking for me. Now, the best interpretation is that those people looking for Deng are the South Sudan Army, and the reason she's telling him to flee is because they want to hurt him. You're talking credibility now. I don't think it's a matter of credibility. We're at a very different level of review. I disagree it's a matter of credibility, Your Honor. But interpreting that, that ambiguity is initially for the IJ, and that's reviewed for clear error by the BIA, and they found no clear error. And now you want us to be the substitute trial tribunal. That's incorrect, Your Honor. The conclusion by the agency was no evidence. What I'm saying is there is evidence, and there's even conflicts in the evidence that the agency didn't address or resolve. It found Deng credible and then promptly ignored the substantive testimony that supported his claim. And the agency mishandled it, Your Honor. It should be sent back to the agency to resolve these problems. Now, the government argues that those people who are after Deng must refer to the Northern Army, but he hadn't mentioned the Northern Army for two pages. And there's both a textual and a logical reason why the government's interpretation is incorrect. Those people should refer to the immediate prior reference of the South Sudan Army, which is looking for him. And logically speaking, if the South Sudan Army were trying to protect him, the aunt wouldn't tell him to flee the village. She would tell him to go seek the protection of the South Sudan Army. Deng also testified that the South Sudan Army later killed Deng's grandfather while trying to look for Deng. Again, the agency did find him credible and did not expressly reject this testimony. I'm not asking the Court to review that determination, because there are two versions of this story, as we admit in our brief. Deng's testimony is based on what he remembers his grandmother telling him, and the agency, it said something different. It said the Northern Army tortured Deng's grandfather while looking for Deng. But the key point is that the agency did not handle this evidence responsibly. It didn't mention either version of the story, any conflict between the versions, or why the agency preferred one version to the other. And under those circumstances, the agency acted — it erred. And — What's your best Eighth Circuit case for that theory of reversal? Well, I think that the Lassu case is the best case that's on point here. In Lassu, it was also a South Sudanese applicant. In that case, there was evidence in the record that South Sudan was persecuting ethnic minorities, and it was undisputed that the petitioner was a member of an ethnic minority. And that case was a close call. The IJA and BIA reached different decisions. The Eighth Circuit panel that reviewed it split. And the majority opinion in that — in Lassu concluded the fact that Lassu was a member of one of 60 ethnic minority tribes that could be tortured does not compel the conclusion that he's more likely than not to be tortured. Okay? And the reason why Lassu's important is that here, Deng presented so much more evidence than Lassu did. Deng presented evidence that South Sudan retaliates against political opponents. He presented evidence that one type of political opponent that South Sudan tortures or executes is child soldiers who fought against it. He presented evidence that South Sudan knows or had reason to know that he fought against it as a child soldier because Deng's family reported him kidnapped. There's evidence that South Sudan previously targeted him for retaliation. And even if South Sudan were somehow to forget that Deng was a child soldier over the last 21 years, if he's removed, South Sudan's going to quickly learn. And with that, I'd like to turn briefly to the mental health basis for his claim. Now, the agency rejected the mental health claim based on a causal chain. The agency considered it pure speculation that Deng's PTSD symptoms would manifest themselves, that he would then be apprehended and detained in South Sudan due to those symptoms, and that he would be tortured or killed in custody for those symptoms. But — I've got to go back. I'm looking at Lassu, and there they reversed the IJ. Correct. The IJ granted asylum. BIA reversed. So they reached different decisions. That makes this very different. Here they denied — they dismissed an appeal of the IJ. I don't think it makes it different, Your Honor. My only point in pointing out the difference between the IJ and the BIA was that in that case, it was deemed to be a close call. The decision-makers reached different decisions at every point. Now, the evidence compels the conclusion that each step in the chain of persecution for mental health is more likely than not to occur. The best guide to what will happen to Deng in the future is what has happened to him in the past. And that's just common sense from the real world. Deng's PTSD symptoms repeatedly manifested themselves before he was imprisoned and while he was imprisoned. They're characterized by violent outbursts and reactive aggressions — reactive aggression. And one key trigger is stress. Thus, it was absurd for the agency to conclude that after undergoing the stress of being removed to South Sudan, his PTSD is unlikely to manifest itself. Is there a document in the record that applies the notion that there's insufficient mental health treatment facilities in South Sudan to PTSD, which is quite a — seems like a pervasive mental health issue these days? No, Your Honor. There's not. The evidence is not that granular. Second, Deng's PTSD caused him to be imprisoned in the U.S. and while imprisoned, subjected to segregation and solitary confinement. Thus, it's absurd for the agency to conclude that this would not happen to Deng in South Sudan. And so the key issue is what's going to happen to Deng when he is detained for his PTSD in South Sudan? Here, the agency considered only whether Deng would be tortured or killed solely for having a mental illness. It failed to consider that once Deng is detained due to his mental illness, the government might torture or kill him for being a political opponent. In other words, there's two branches here. Once he's in prison for the mental illness, he could be tortured for the mental illness itself or for being a political opponent. There's compelling evidence that South Sudan actively abuses its mental health detainees. And here's the key quote, appendix, page 84. Many facilities in rural areas consisted of uncovered spaces where authorities chained detainees to a wall, fence, or tree, often unsheltered from the sun. That's deliberate mistreatment of mental health people. You can't claim that on a lack of resources, chaining people to a tree outside of the sun. Well, really the lack of resources, you say it's not in the record in a granular way, but I thought I read in the record someplace where they said there were only three or four psychiatrists in the whole nation and that there's only two or three true mental health facilities and then everything else is people are stuck in local communities, do or make do as they can. And, you know, if you have a person who's criminally insane, sometimes the only thing you can do is chain them up if you have no other options available. Well, I disagree with that conclusion, Your Honor, and that's not evidence in the record. I'm not even sure the real world would draw that conclusion. But you're correct about the lack of mental health facilities. Well, there's a complete lack of mental health facilities and there's a complete lack of hospitals, and it's a completely broken-down nation-state in a lot of ways. And the key point here is that when they detain him, they're not going to put him in a psychiatric ward. They're going to put him in prison, which is where all the political opponents are. And when it comes out that he's got PTSD, if they don't already know it, they're going to torture him because the evidence is ironclad compelling that the government tortures or kills political opponents. So for these reasons, I ask that Your Honor grant Mr. Deng's appeal and either award him cat relief or remand at the agency. Thank you. Thank you.  Thank you, Your Honor. May it please the Court, Katie Rourke on behalf of the government. No one disputes that Petitioner had a traumatic childhood in Sudan, which has However, due to his criminal convictions, the only form of protection available to him was deferral of removal under the Convention Against Torture, which provided him with an exceedingly narrow path to avoid removal to South Sudan. Slow down a little. Sorry, Your Honor. Before the agency, Petitioner was required to show that it was more likely than not he would be targeted for torture by the South Sudanese government as a former child soldier and as a person with a mental illness. The agency concluded that Petitioner did not meet this incredibly high standard, and the record does not compel reversal of that decision. First, the record does not compel the conclusion that Petitioner is more likely than not to be tortured by the South Sudanese government in retaliation for his involvement with the Northern Army as a child soldier. There is no objective evidence in the record to support Petitioner's contention that the South Sudanese government would view him as a political opponent based on his force recruitment as a child soldier. This Court has repeatedly held that generalized evidence of human rights abuses is insufficient to show that a particular non-citizen faces a clear probability of future torture. For instance, in Lassu, this Court found that the Board correctly concluded that Lassu must show more than a pattern of general ethnic violence to meet the cat's likelihood requirement. Similarly, in Dangchul, this Court found that Dangchul failed to show a personalized fear of torture because he did not show that the specific faction to which he belongs is the object of ethnically targeted violence, and the agency's decision was consistent with this precedent. The agency here acknowledged evidence that South Sudanese security forces detained and tortured political opponents, but properly concluded that this generalized evidence of torture did not show this Petitioner would be personally at risk of torture. The record suggests that these incidents were either ethnically motivated or directed at journalists or other civil society members critical of the government, and there is simply no evidence that the South Sudanese government is seeking out former child soldiers like Petitioner and torturing them in retaliation for their involvement with the Northern Army in a war that ended nearly two decades ago. In fact, the record contains evidence that following the war, efforts were made by the government to demobilize and reintegrate former child soldiers into their communities. Petitioner also points to evidence that the South Sudanese government has executed child soldiers both during the civil war with the North and during the current ethnic-based conflict as supporting his claim. But as Judge Erickson pointed out, this evidence is insufficient to show that Petitioner faces a particularized risk of torture because this evidence, Petitioner is not similarly situated to these individuals. He is no longer a child soldier, and there is nothing in the record that suggests he would be targeted anew for his conduct some 20 years ago. Petitioner attempts to overcome the lack of particularized evidence by claiming that the agency ignored relevant testimony. However, the agency is entitled to the presumption that it considered all evidence and arguments before it and is not required to discuss each piece of evidence. And here, the agency didn't ignore Petitioner's testimony. It simply concluded that it was insufficient to meet his burden of proof. Well, you know, they did that, you know, but there's a question about the IJ's finding that there's no evidence that the second part of it, his mental health and what risk that poses. I mean, this is a person who suffers severe PTSD. This is a person who was out of control on a regular basis while incarcerated and ended up being in solitary confinement as a result of it. And, you know, they've gone around and said there was no evidence, a 0 percent chance, and entirely speculative that his mental health condition might decompensate and that he would be at risk of being tortured. When the reality is, is that it seems imminently predictable that he's already a person who's in a relatively decompensated state. I mean, he hasn't had any extended period where he hasn't, where his behavior has been well under control or well managed because he's been in solitary most of the time. And there's, you know, now left without medications, without any source of treatment, in a relatively destabilized, impoverished society. Is it really fair to say there's, like, no, that it's entirely speculative that he might have an incident that could result in him being put into these conditions, which the more rural you get, the harsher they are? Correct, Your Honor. So this Court has repeatedly held that a non-citizen must show that each step in the hypothetical chain of events leading to his or her torture is more likely than not to occur, meaning it is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link. And here, the agency properly concluded that Petitioner did not show each of the hypothetical events relevant to his claim. But Judge Erickson's talking about his recent incarceration in this country. Right. So just because Petitioner has a history with U.S. law enforcement and has exhibited outbursts relating to his PTSD does not mean it is more likely than not that he would do so in the future. There are a number of other possibilities, such as he receives the treatment he needs or... What's your best case for that, particularly in a mental health issue? An Eighth Circuit case, Your Honor? Well, that probably doesn't come up that often. I do believe that there was a similar issue raised in this Court's case, Chor v. Garland. It was also a South Sudanese case where the non-citizen raised a slightly similar claim where he was fearing ethnic-based violence based on his membership. I believe it was based on his... Is that case in your brief? Chor v. Garland. Yes, it is. But he was claiming that he was going to be tortured based on his father's involvement with the South Sudanese Parliament. He represented the southern portion of the country but lived in the north where the Parliament was located. So the southern part of the country viewed him as a traitor for working for the Parliament because he was from the south. You've got to say that case again. I think it started with S. It's C, C-H-U-O-R, Chor v. Garland. Spell it again. I don't see it in your table of authorities. I believe we did cite it in our brief, but if we did not... It's C-H-U-O-R, Chor. Oh, then I've been spelling it wrong, Your Honor. I apologize. I wrote Chor. But we would argue that that case is similar. He was claiming he was going to be tortured based on his father's membership in Parliament during the 1990s. And there was also a mental health claim raised similar to this petitioner. But I would note that it is unclear what treatment petitioner actually requires for his PTSD such that it would be more likely than not that he would not receive that treatment. His medical records don't contain a current treatment plan and indicate he was last prescribed psychiatric medication and engaged in cognitive behavioral therapy in 2016. The record also does not compel the conclusion that it is more likely than not he will be detained and tortured by South Sudanese authorities for his mental illness. The agency acknowledged evidence that persons with mental illnesses were sometimes incarcerated following a referral from a family member or the community, but nevertheless concluded that this country conditions evidence did not demonstrate that he would subsequently be reported in authorities detained and tortured. Specific grounds must exist that the person, that the individual would be personally at risk of torture. And here there's no evidence that persons with mental illnesses are more likely to be incarcerated when compared to the general South Sudanese population or that inmates with mental illnesses are more likely to be singled out for torture for either discriminatory reasons or as a form of punishment such that this petitioner would be personally at risk of torture if detained. I want to return to Petitioner's child soldier claim really quickly. Petitioner pointed to evidence that the South Sudanese government has executed child soldiers both during the war for South Sudan's independence and during the current ethnic-based conflict. Again, I just want to emphasize that Petitioner is not similarly situated to these individuals because as Judge Erickson pointed out, he is a former child soldier. He's not currently engaged in hostilities against the government. And then I would note that the immigration judge did consider the fact that Petitioner was kidnapped and tortured by the Northern Army, but found that any likelihood of future torture was considerably diminished by two related factors. First, the significant passage of time, and second, the lack of an ongoing or current interest in Petitioner. I think it's important to remember that the CAT analysis is a forward-looking inquiry regarding what will likely happen to a non-citizen if he is returned to his country of origin. And the immigration judge explained why the record did not demonstrate that Petitioner currently faces any particularized risk of harm. The immigration judge emphasized Petitioner has not been in South Sudan in 21 years and has been inactive in South Sudan or its political landscape. There is no evidence in the record that would indicate that anyone from the government was looking for Petitioner and would target him for torture. That's at page 51 of the administrative record. I would also argue that Petitioner's focus on the contradiction between his testimony and the sworn declaration from his grandmother is a bit of a red herring. Again, the CAT analysis is future-oriented, and the immigration judge did not doubt that he had experienced past harm. But past torture does not give rise to a presumption of future torture, and in Petitioner's case, his particularized risk diminished with the passage of time. And there is no evidence that anyone from the government is currently looking for him and intends to torture him. What's the evidence that makes the relocation issue significant? So, Your Honor, the relocation issue is not before this Court. But it was part of the IJ's analysis. It was. The issue you're talking about now. I wasn't talking about relocation. I was talking about whether the government had a current interest in harming him. But the immigration judge's internal relocation finding isn't before the Court because the Board affirmed the immigration judge's denial solely on account of Petitioner's failure to establish that it was more likely than not he would be tortured. The IJ said there was not sufficient evidence. He couldn't relocate to other areas in South Sudan. Yes. He hasn't been there for 21 years. And no proof people are now looking for him. So what is the government, what is the positive evidence that there are safer areas in South Sudan than the rural area that he came from? So, again, the internal relocation finding is not before the Court. The Board did not affirm that basis of the immigration judge's decision. The Board found that the likelihood of torture or the lack thereof was dispositive of his claim, and as such the Board declined to address Petitioner's remaining contentions on appeal, citing the Supreme Court decision in INS v. Vagambad. Going back to your argument that you made a moment ago about red herring, you're referring to the question whether it was the South Sudanese or the North Sudanese who were searching for him. I was referring to his testimony that his grandfather had been killed by the South Sudanese Army, whereas his grandmother in her declaration claimed that it was the Northern Army. I don't think the immigration judge here doubted that, you know, terrible things had happened to him in the past. Was there a finding on that question by the Board? There was not, Your Honor, no. But, again, I don't think the agency overlooked it. I think they were just not doubting that anything bad had happened to him in the past. They were just saying, because of the significant passage of time, that his particularized risk had diminished, such that he's no longer at risk currently. But then so where does the record stand on whether it was the North or the South who took the grandfather? It's ambiguous, Your Honor. Pardon me? There is still a contradiction. It does exist in the record, but it is ambiguous of which version of events. So you're saying we would have to assume the most favorable finding for the petitioner? No. Because it's a substantial evidence standard of review, I would argue that the Court would have to construe any ambiguity in the record in favor of the agency's decision under the substantial evidence standard of review. Well, except you said they didn't resolve this. Correct, Your Honor. We would if they resolved it, of course. We'd have to see if there was sufficient evidence to support that resolution. But what if they don't resolve it? I would still argue under the substantial evidence standard, which is deferential to the agency, that you would have to consider. And I believe there's a Sixth Circuit case that does say this, and I can't remember it off the top of my head. Do we have to assume that they resolved it? Not necessarily, but just reading the facts, the most favorable for the agency and what would support their findings. I'm sort of confused about what's your point. Sorry. Well, I was going to go to another point, so if you want to follow up. I'm sort of confused about where you're at, because I thought your argument that it's a red herring, you don't need to worry about it, is because whether it's resolved or unresolved, it's 20 years old. And whatever happened 20 years ago is not predictive of what will happen today. But now, all of a sudden, you're saying that we've got to give some weight to a non-decision, and that seems to be somewhat problematic. Right. Your Honor, so that was my argument, that it is because of the passage of time, that it's not irrelevant, but it had diminished his risk. I was just saying hypothetically, if the court wanted to address the ambiguity, then the government's position would be. But I would have thought, then, that your answer would be, you may assume that it was, that the grandfather was taken by the South and you should affirm anyway. Yes, Your Honor. Under either scenario, we would argue, because of the fact that so much time has passed, that if he was taken by the South or the North is really, again, a red herring because. . . Maya, I just wanted to understand on the question of deferral of removal. Remind me, if he's granted that relief, what does it mean? What is the deferral? It means he can't be removed to South Sudan. He could still be removed from the United States to a third country, theoretically, if they'd be willing to take him, but it would just mean that he cannot be removed until country conditions change to South Sudan. So it's called deferral because if the conditions changed in Sudan, then he could be removed to Sudan later? Yes. The Department of Homeland Security could file to reopen his case. I see. And in that situation, he would. . . And am I right that he was discharged from Minnesota custody? Did I read that correctly? Yes. So he was released in February of last year. February of this year or last year. . . The sentence is completed on the attempted murder? Yes, Your Honor. And he was released on alternative detentions from ICE custody because he was transferred briefly from Minnesota State custody to ICE custody. And then he was released. Is that a permanent release? If he were granted relief in this case, would he be released into the community then, or does Minnesota retain some authority over him? I don't believe so because he did serve his sentence for his Minnesota State convictions, but I'm not 100 percent sure on that, Your Honor. All right. Thank you. If there are no further questions from the Court, I would just briefly sum up. The Court should look to its prior decisions and Jima, Lassu, Dangchul, and Chor as guidance in this case. The common thread between those South Sudanese CAT cases was that the evidence relied upon by the petitioners was too high a level of generality to show an individualized risk of torture. The petitioner's case suffers from the same deficiencies, and based on the foregoing, the government would respectfully ask that the Court deny the petition for review. Thank you, Your Honors. Thank you. The government argued that the agency is entitled to a presumption that it considered all the evidence. That may be true unless there's evidence in the record from its conclusions that it did not, and that's the case here. It's no evidence conclusion is just a big mistake in face of the compelling evidence in the record. The government also argued that Dang will get treatment in South Sudan, as Judge Erickson pointed out. That's incredibly unlikely given the limited resources they have for treating people with mental disabilities. And lastly, if it's the case that South Sudan killed or took Dang's grandfather because they were looking for him, he should win this appeal. If there's any chance that that's true, Dang should win this appeal and his relief. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued, and we'll take it under advisement.